IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDIA HALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-1361-D |
| VS. | § | |
| | § | |
| SEALY, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This age discrimination case arising from a reduction in force turns on whether a terminated employee has presented evidence that would enable a reasonable jury to find that she was clearly better qualified than a younger employee who was not discharged, and whether she has done more than create a weak fact issue regarding whether the employer's proffered reason for terminating her was its true reason. Concluding that she has not, the court grants summary judgment in favor of the employer and dismisses this action with prejudice.

I

This is a suit by plaintiff Claudia Hall ("Hall") against defendant Sealy, Inc. ("Sealy") under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Sealy hired Hall in 1998, when Hall was 48 years old, for the position of Regional Sales

Manager ("RSM").¹ As an RSM, Hall was responsible, *inter alia*, for attaining sales and performance objectives and developing and maintaining specific key accounts in the western region of the United States. During Hall's tenure, Sealy underwent several corporate restructurings, including the creation of a new position, Vice President of Global Contract and Export Sales, which was filled by Mark Akerman ("Akerman"). Akerman oversaw Joe Miller ("Miller"), who had been promoted to Director of Contract Sales in February 2008. As of March 2009, three RSMs worked under Miller: Hall, Ed Cowx ("Cowx"), and Thomas Tervo ("Tervo").

Sometime during mid 2009, Sealy terminated Cowx for performance reasons, leaving a vacancy in the management of Sealy's northern region accounts. Despite the hiring freeze then in effect, Sealy's Human Resources department authorized Akerman to hire a replacement for the northern region. At no point did Miller and Akerman discuss the possibility of not hiring a third RSM and simply splitting the territory between Miller and Hall.²

Of the candidates under consideration to fill the vacancy left by Cowx, Akerman decided that Linda Bordner ("Bordner") was the best fit because she had strong contacts with

---

¹In recounting the factual background, the court summarizes the evidence in the light most favorable to Hall as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

²When Miller was promoted to Director of Contract Sales, he continued to manage the region he oversaw in his previous role as RSM.

- 2 -

some of the accounts in the northern region and with Choice Hotels, with whom Sealy was then negotiating. Because Bordner did not hold a bachelor's degree, as required in the RSM position description in effect at the time of Bordner's interview, it was necessary for Akerman to obtain approval from Human Resources to hire her. Bordner began working for Sealy in June 2009. At the time, Bordner was 50 years old, and Hall was 59.

There is a dispute in the summary judgment record regarding when Sealy determined that it was necessary to eliminate one of the three RSM positions to cut costs. Miller testified that approximately halfway through 2008 he began to notice that a downturn in the hospitality industry was starting to affect Sealy's sales numbers. According to Miller, however, it was not until October 2009, four months after hiring Bordner, that he and Akerman began discussing the possibility of terminating Hall. Miller testified that he and Akerman discussed that Hall was the weakest link and decided to approach Human Resources with the plan to reduce the number of RSMs by terminating Hall's employment. In contrast, Akerman testified that numerous cost reduction measures were implemented before Hall was terminated in December 2009, and that during the first quarter of 2009, Carmen Dabiero ("Dabiero"), the head of Human Resources, informed Akerman that he would need to reduce the number of RSMs.

After the decision was made to terminate Hall, Dabiero wrote a document entitled "Global Contract Reorganization" ("GCR"). According to the GCR, Sealy decided to "restructure the organization and refocus resources in the area of Business Development," and that "[t]o offset the expense of this refocusing one of the three [RSM] positions [would]

be eliminated." D. App. 8. The GCR explained that, of the three RSMs—Tervo, Hall, and Bordner—Tervo's position should not be eliminated because he had the most seniority, unique responsibilities in military sales, and coordinated the production of new products. The GCR then compared Hall with Bordner, noting Hall's successes but also stating that issues had developed since her earlier successes, such as her reluctance to develop prospects outside the Las Vegas market, her lack of response to her supervisor's directions on reporting and travel, and her failure to correct an order of non-code-compliant mattresses. Dabiero concluded in the GCR that Bordner should be favored over Hall for these reasons.

In December 2009 Miller met with Hall to inform her that Sealy was terminating her position. Miller told Hall that Sealy was "[e]liminating the region," but he also mentioned that he had no confidence in her ability to take on more responsibility, and that she was "[n]ot meeting goals." *Id.* at 35-36. Miller sent an email informing the Contract Division and sales representatives that, "[i]n an effort to strengthen [Sealy's] position in the market place, as well as respond quicker to issue[s] and opportunities, [Sealy had] realigned key roles within the Sealy Global Hospitality division." *Id.* at 13. He added that "[t]his new structure will enable [Sealy] to respond to [contract sales representatives'] issues and opportunities quicker, enabling you to maximize commissions." *Id.* at 14.

Hall continued working for Sealy until the termination date of December 31, 2009. Hall (then age 59), as well as a 34-year-old senior territory manager and a 37-year-old

internal audit manager were discharged as part of an alleged reduction in force ("RIF").[3]

Following Hall's termination, the third RSM position remained vacant and was phased out by September 2010.

II

Sealy moves for summary judgment on claims as to which Hall will bear the burden of proof at trial. Because Hall will have the burden of proof, Sealy can meet its summary judgment obligation by pointing the court to the absence of evidence to support Hall's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Sealy does so, Hall must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Hall's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Hall's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). Summary judgment is mandatory if Hall fails to meet this burden. *Little*, 37 F.3d at 1076.

---

[3]A 50-year-old senior human resources representative was terminated shortly before on December 11, 2009. A 31-year-old logistics manager trainee was terminated some time afterward on January 28, 2010, and a 50-year-old Vice President of New Business Development was terminated on January 31, 2010. Akerman himself was eventually given the option of taking a large pay reduction or leaving the company. Akerman (then age 49) chose to leave the company and was replaced by someone who was older and was rehired by Sealy following his departure in 2007.

III

It is unlawful under the ADEA "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

To prove age discrimination, Hall can rely on direct or circumstantial evidence. *See, e.g.*, *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence."). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (internal quotation marks omitted)). "In other words, to qualify as direct evidence of discrimination, an employer's comment 'must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Direct evidence of discrimination is rare, however. *See, e.g.*, *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (sex discrimination case) (stating that because direct evidence is rare in discrimination cases, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion). If Hall lacks direct evidence of discrimination, she can

prove discrimination using the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] In this case, Hall does not rely on direct evidence of discrimination. Therefore, as "[a] plaintiff relying on circumstantial evidence[,] [she] must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Sealy's burden is one of production, not of proof, and involves no credibility assessments. *See, e.g., West,* 330 F.3d at 384-85. If Sealy articulates a legitimate, nondiscriminatory reason for the employment decision, Hall must introduce evidence that would enable a reasonable trier of fact to find that Sealy's purported explanation is merely pretextual. *See, e.g., Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010). These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

---

[4]In *Gross v. FBL Financial Services, Inc.*, ___ U.S. ___, 129 S. Ct. 2343 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." *Id.* at 2349 n.2. The Court relied instead on a textual analysis of the ADEA to resolve the question whether a plaintiff can succeed on a "mixed-motives" claim of age discrimination. Absent Supreme Court authority, the court will follow the Fifth Circuit's post-*Gross* precedent and apply *McDonnell Douglas* to ADEA cases. *See, e.g., Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (applying *McDonnell Douglas* framework to ADEA claim).

IV

Under the *McDonnell Douglas* framework, Hall must first establish a prima facie case of age discrimination. "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)) (internal quotation marks omitted). A prima facie case merely raises the inference of discrimination, because the court presumes that the employer's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 & n.44 (1977); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). In an age discrimination case, a plaintiff is only required to show that "(1) [she] was discharged; (2) [she] was qualified for the position; (3) [she] was within the protected class at the time of discharge; and (4) [she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Jackson*, 602 F.3d at 378 (quoting *Berquist*, 500 F.3d at 349) (internal quotation marks omitted); *but see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (clarifying that age difference must be "substantial," because an insubstantial age difference does not create the inference that an employment decision was based on an illegal discriminatory criterion). In cases involving a RIF where the plaintiff has not been replaced, the fourth element of a prima facie case can be established by evidence that members outside the protected class remained in similar positions after the RIF. *See, e.g., Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 725 (N.D.

Tex. 2006) (Fish, C.J.) (citing *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir. 1997)); *Best v. GTE Directories Serv. Corp.*, 1993 WL 13143213, at *4 (N.D. Tex. Mar. 19, 1993) (Fitzwater, J.) ("The discharge coupled with the retention of younger employees creates the presumption of discrimination in a [RIF] case." (citing *Thornbrough*, 760 F.2d at 644)). There is no dispute regarding the first three elements of the prima facie case. The court therefore considers only whether Hall has offered sufficient evidence to satisfy the fourth element.

It is unclear whether, for purposes of Hall's prima facie case, this case is properly viewed as a RIF case or as a "replacement" case. Although Hall cites various cases for the proposition that she can satisfy the fourth element by showing a retention of younger employees after the firing of a qualified older employee, the bulk of her argument focuses on whether Sealy hired a "substantially younger" employee (Bordner) in her place.[5] Accordingly, the court will consider whether the nine-year age difference between Bordner and Hall is "substantial" enough to make a prima facie showing of age discrimination under *O'Connor*. *See O'Connor*, 517 U.S. at 313 ("In the age-discrimination context, [an inference that an employment decision was based on an illegal discriminatory criterion] cannot be drawn from the replacement of one worker with another worker insignificantly younger.").

There is no bright line rule that governs what age difference is "substantial." *See*

---

[5]Hall cannot rely on the first alternative for satisfying the fourth element—i.e., replaced by someone outside the protected class—because Bordner was 50 years old at the time she was hired and therefore within the protected class. *See* 29 U.S.C. § 631(a) (limiting ADEA protections to persons who are at least age 40).

*Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) ("The ADEA does not lend itself to a bright-line age rule."). In *Bienkowski* the plaintiff was five years older than his replacement. The panel stated that this five-year age difference presented "a close question whether he established a prima facie case." *Id.* Ultimately, the panel held that the plaintiff had made out a prima facie case of age discrimination, reaching this decision by factoring in the ages of both the plaintiff and his colleagues. *Id.* Since *Bienkowski*, the Fifth Circuit has stated again that a five-year age difference is a "close question," but has yet to decide whether five years is substantial. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) (stating that five year age difference is a close question, but declining to resolve this issue because plaintiff presented other evidence that established prima facie case of age discrimination). Because the Fifth Circuit has declined to hold that a *five*-year age difference is insubstantial, this court declines to conclude as a matter of law that an age difference of more than nine years is insubstantial. *See Bell v. Raytheon Co.*, 2009 WL 2365454, at *6 (N.D. Tex. July 31, 2009) (Fish, J.) (assuming without deciding that plaintiff established prima facie case of discrimination because court was not prepared to declare age difference of seven years insubstantial as a matter of law); *Cannon v. St. Paul Fire & Marine Ins. Co.*, 2005 WL 1107372, at *4 (N.D. Tex. May 6, 2005) (Godbey, J.) (same).[6]

---

[6]Likewise, the court rejects Sealy's suggestion that the court calculate whether a difference is substantial based on the ratio of the ages. *See* D. Br. 9 (asserting that "[a] 7 or 9 year difference for people in their 40's is more significant than a similar age difference for people in their 50's."). This premise is not recognized by authorities that are binding on this court.

Accordingly, the court will assume that Hall has satisfied the fourth element and established a prima facie case of age discrimination.[7]

V

The court considers next whether Sealy has met its burden of producing evidence of a legitimate, nondiscriminatory reason for terminating Hall.

Sealy has satisfied its production burden by introducing evidence that it discharged Hall as part of a RIF. Sealy has adduced evidence that an economic downturn affected Sealy's usual customer base in the hospitality industry and that it was looking to shift emphasis to other markets. In the GCR that Dabiero prepared, Sealy articulated its position that Hall's termination was a part of a RIF, explaining that it planned to "restructure the organization and refocus resources" to develop new avenues of business and that, to offset the expense, it would try to proceed with two RSMs instead of three. D. App. 8. Sealy also explained why Hall was selected for termination out of three RSMs: one RSM (Tervo) filled a unique niche within the company due to his involvement in product development and expertise in military sales. The other RSM (Bordner) seemed to have both contract sales expertise and a strong work ethic in prospecting new accounts, while Hall had shown reluctance to develop additional prospects and had nearly allowed a potential liability to go uncorrected in connection with the "Boston incident." Akerman believed that Bordner

---

[7]Because the court assumes that Hall was replaced by a "substantially younger" person, it need not address whether Hall has shown that she was otherwise discriminated against because of her age.

shared Sealy's vision to develop new business, while Hall did not seem similarly motivated. Miller's email to the contract sales representatives also stated that realigning the RSM roles would enable Sealy to respond more quickly to issues and opportunities.

"A RIF is presumptively a legitimate, non-discriminatory reason for a discharge." *Rosenblatt v. 7-Eleven, Inc.*, 2007 WL 2187252, at *6 (N.D. Tex. July 27, 2007) (Fitzwater, J.) (citing *Tucker*, 462 F.Supp.2d at 727). Accordingly, Sealy has met its burden of production, and the burden has shifted to Hall to "'raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination.'" *Id.* (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001)).

VI

The court now considers whether Hall has introduced evidence that would enable a reasonable jury to find that the reason on which Sealy relies is pretextual.

A

In a RIF case, a plaintiff can prove pretext by introducing evidence that she "was *clearly* better qualified than younger employees who were retained." *Id.* at *7 (quoting *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) (internal quotation marks omitted); *see also Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993) (concluding that factfinder can infer "pretext masking discrimination" if the plaintiff is "*clearly better qualified* for the position in question"). Demonstrating that a candidate is "clearly better qualified" requires the disparities in qualifications to be "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the

candidate selected over the plaintiff for the job in question.'" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)). This stringent requirement, when combined with the summary judgment standard, requires that Hall adduce evidence that would enable a reasonable jury to find that no reasonable person could have chosen Bordner over Hall. Hall has not met this burden.

Hall maintains that her education, employment record, sales experience in the bedding industry, and record of success vastly exceeded Bordner's. Hall holds a bachelor's degree, which was one of the requirements of the RSM position, while Bordner never completed her bachelor's degree. Hall obtained Master Hospitality Supplier Certification, while Bordner achieved that certification sometime after she was hired (but before her termination).[8] Hall received four Circle of Excellence awards and consistently demonstrated a strong sales record since being hired in 1998. Bordner—a recent addition to the company—had yet to prove herself. The bulk of Hall's job experience came from sales in the bedding industry,

---

[8]Based on Hall's casual dinner conversation with Bordner, Hall stated that she had the impression that Bordner lacked account strategy training and did not have as favorable performance results as Hall's when with her previous employer. Because Hall has failed to produce evidence of her personal knowledge of the extent of Bordner's training or track record with her previous employer, this opinion testimony is inadmissible under Fed. R. Evid. 702. Nor is this opinion evidence admissible under Fed. R. Evid. 701 given the absence of any basis in the record to conclude that Hall's opinion is "rationally based on [her] perception" or even "helpful to . . . the determination of a fact in issue." *See* Fed. R. Evid. 701. Hall testified in general terms that she and Bordner discussed "life" and the fact that Bordner never completed a higher degree. But the record lacks necessary detail concerning the conversations and actions taken during the dinner for the court to conclude that Hall's opinions are admissible under Rule 701 or 702.

while Bordner had recently moved to Sealy from a career in the seating industry. One independent sales representative, Lauren Schulte ("Schulte"), opined that, based on her experience working under both Hall and Bordner, Hall was the best manager with whom she had ever worked.[9]

But taking these facts as true (and assuming Schulte's opinion to be true to the extent described *supra* at note 9), a reasonable jury could not find that Hall was so "clearly better qualified" that no reasonable person would have retained Bordner over Hall. Such a jury could only find that a reasonable person would relax the employer's educational requirements to hire someone with specific industry and regional connections, especially when the region had been problematic for predecessor RSMs. A reasonable jury could only find that a reasonable person would favor such an employee over a more educated, but less enthusiastic, person whom the employer considered reluctant to develop new markets. A reasonable jury could only find that a reasonable person would conclude that the experiences and connections gained in selling chairs for the hospitality industry as a National Sales

---

[9]Sealy made three objections to this portion of Schulte's declaration on the ground that it is conclusory and without factual support. Even if the court considers these statements as reflecting Schulte's opinion about her own experiences—i.e., "Hall is one of the best managers that I ever worked with," and "[Hall] is clearly the best manager I have ever worked with at Sealy, which includes Joe Miller and Linda Bordner," P. App. 165—this does not alter the outcome of Sealy's summary judgment motion. At most, this evidence would enable a reasonable jury to find that Schulte *believed* that Hall was superior to Bordner as a RSM, or that sales staff with experiences and roles similar to Schulte's might find Hall's management superior to that of others at Sealy with whom Schulte worked. Taken alone, or in combination with other evidence in the summary judgment record, a reasonable jury could not find pretext based on this evidence.

Manager could be transferrable to selling mattresses to those same clients as an RSM for Sealy.[10] A reasonable jury could only find that a reasonable person would retain a relatively new, but unproven, manager over one who had received numerous performance awards, where old markets were drying up, the company was shifting its emphasis to develop business in new areas, and senior management considered the new manager to be enthusiastic about developing sales in these new directions but deemed the experienced manager not to be on-board with this shift in market strategy. And a reasonable jury could only find that a reasonable person seeking to improve responsiveness between independent sales representatives and RSMs would opt to improve response times by eliminating an RSM perceived to be less responsive and allowing two RSMs perceived to be more responsive to take over communication duties.

Accordingly, Hall has failed to raise a genuine issue of material fact regarding whether she was "clearly better qualified," as opposed to merely better qualified for the roles Sealy intended its RSMs to play, given the non-age-related strengths that Bordner possessed.[11] *See Moss*, 610 F.3d at 922-23 (requiring "showing that the unsuccessful employee was '"clearly better qualified" (as opposed to merely better or as qualified) than

---

[10]Bordner acknowledged that skills gained while selling different products could be transferrable, explaining that a class in selling plastics helped her become more qualified in selling, generally.

[11]Although Hall has submitted evidence to show that her own sales performance was outstanding, she has presented no proof—other than her own opinion—that would enable a reasonable jury to find that Bordner's performance was worse. Hall acknowledges that her opinion is not grounded on personal knowledge of Bordner's sales figures.

the employees who are selected' . . . to prove that the employer's proffered reasons are pretextual." (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995))).

B

The court turns finally to the question whether Hall has raised a genuine issue of material fact regarding the element of pretext by adducing evidence that Sealy's purported reason for Hall's termination (a RIF) was not the actual reason she was terminated. *See*, *e.g.*, *West*, 330 F.3d at 385 ("'[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" (quoting *Reeves*, 530 U.S. at 147)). Even if the court assumes *arguendo* that Hall has raised a fact issue concerning whether the RIF was the real reason Hall was terminated, the court still holds that Sealy is entitled to summary judgment. This is so because, at most, Hall has created a weak fact issue on the question whether the RIF was the true reason for her termination.

"The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct." *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)). In other words, "'[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Aside from the nine-year age difference itself, Hall presents no evidence that age, as opposed to some other reason, was the motivation for her termination.

Akerman testified that he and Miller wanted to hire a regional person with hospitality industry experience, because Sealy's previous RSMs had been unsuccessful in the northern region. Even assuming that Sealy's proffered RIF rationale is false and that Sealy had planned to replace Hall with Bordner all along, Sealy's management offered non-age-related reasons to explain why Sealy hired Bordner instead of letting Hall take over the vacancy left by Cowx (e.g., strong connections to an undeveloped region and a key client) and why Sealy favored Bordner over Hall (i.e., Hall's recent lack of enthusiasm for expanding into new markets, Hall's perceived irresponsibility in failing to quickly correct an order of illegal mattresses, and Sealy's need to improve communication with independent sales representatives). Miller told Hall that Sealy was eliminating the region, that he lacked confidence in Hall's ability to take on more responsibility, and that Hall was not meeting her goals. Miller then sent an email stating that Sealy had restructured key roles in order to strengthen Sealy's place in the marketplace and to respond more quickly to issues and opportunities. The GCR that Dabiero drafted indicated that Hall was chosen for inclusion in the RIF because of her failure to develop markets outside Las Vegas, her irresponsibility in failing to correct an order of illegal mattresses,[12] and Sealy's need to improve

---

[12]Hall argues that the "Boston incident" involving the non-compliant beds was pretextual because Sealy gave her the responsibility of drafting a new process for Boston orders following the incident. Hall contends that, if Sealy believed she was ethically questionable and cavalier with legal liabilities, it would not have given her such important responsibility in correcting this problem. Even if the court assumes *arguendo* that this evidence could raise a fact issue regarding whether the accusations of lack of ethics and untrustworthiness were pretextual, a reasonable jury could not find that her age was the but-for cause of her termination.

communication with independent sales representatives. Even if these assessments of Hall's weaknesses were incorrect, and even if Miller, Akerman, and Dabiero gave different reasons at different times to justify the termination, Hall has failed to introduce evidence that would enable a reasonable jury to find that her age, rather than Sealy's desire to replace her with someone whom Akerman and Miller perceived to be better aligned with their vision, was the but-for cause of her termination.

Hall does not dispute that her position within Sealy was in fact eliminated (i.e., that a RIF occurred). Nor does she contest that Tervo, one of only two RSMs retained during the RIF,[13] was 64 years old at the time of her termination. Hall does not challenge the summary judgment evidence that all of the other employees discharged at around the same time as Hall were younger than Bordner. When Akerman, the 49-year-old vice president who oversaw Hall's Contract Division, left Sealy after being offered the choice to quit or take a pay cut, Sealy replaced him with an older person whom Akerman perceived to be in his sixties. Even if Hall argues that the other terminations around that time were not comparable to hers, she still cannot point to summary judgment evidence that would enable a reasonable jury to find that her age was the but-for cause of her termination.[14]

---

[13]Tervo was subsequently terminated on September 1, 2010 due to a position elimination.

[14]She cannot rely, for example, on her subjective belief that she was discharged because of her age. *See, e.g., Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value.").

Although, as a general matter, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," there are "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. As in the present case, the plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. Thus it is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *West*, 330 F.3d at 385 (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000)); *see also Rosenblatt*, 2007 WL 2187252, at *12 (granting summary judgment where, assuming fact issue on question of pretext existed, fact issue was "weak," and there was no evidence that employee's age was ever considered in employer's decision to terminate his employment). Hall has at most created only a weak fact issue regarding whether Sealy's proffered reason for her termination (her inclusion in a RIF) was its true reason for terminating Hall's employment, and there is abundant, uncontroverted evidence that age was not a factor in Sealy's decision to terminate her employment.

Because a reasonable jury could not find that Hall's age was the but-for cause of her termination, Sealy is entitled to summary judgment dismissing her ADEA claim.

* * *

Accordingly, for the reasons explained, the court grants Sealy's motion for summary judgment and dismisses this case by judgment filed today.

**SO ORDERED**.

September 21, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE